52 F.3d 334
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
OFFICERS FOR JUSTICE; United States of America, Plaintiffs-Appellees,
v.
CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation,
Defendant-Appellee.
Stephen A. Zimmerman, Applicant in intervention-Appellant.
 No. 93-17179.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 4, 1995.*
Decided April 13, 1995.
 
 Before: BRUNETTI, THOMPSON and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Stephen A. Zimmerman, a Caucasian male police officer, appeals the district court's denial of his motion to intervene, pursuant to Federal Rules of Civil Procedure 24(a) and 24(b), in an action contesting the validity of a San Francisco Police Department promotion examination. The examination was created and administered under the auspices of a consent decree settling a racial and sexual discrimination suit against the City of San Francisco. We affirm.
 
 FACTS
 
 3
 In 1973, individual racial minority and female police officers, as well as the Officers for Justice (OFJ), an organization representing minority officers, sued the City and County of San Francisco (City) alleging discrimination in hiring and promoting pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000(e) et seq. In 1977, the San Francisco Police Officers Association (POA) intervened as a defendant. The United States Department of Justice (DOJ) subsequently sued the City for discriminatory employment practices. This suit was consolidated with that brought by the OFJ.
 
 
 4
 In 1979, the district court entered a consent decree in Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco, 473 F.Supp. 801 (N.D.Cal.1979), aff'd, 688 F.2d 615 (9th Cir.1982), cert. denied, 459 U.S. 1217 (1983), which was signed by the City, the DOJ, the OFJ, and the POA (collectively, Appellees), settling the lawsuit. The consent decree, which was intended to govern selection procedures for ten years, required the City to promote a certain number of officers and prohibited the City from using methods in its hiring and promotions that would adversely impact women and minorities.
 
 
 5
 Because of delays in administering promotional examinations, the City failed to make most of the required promotions. To expedite the process, in 1986 the district court, with the consent of the parties, entered a "Supplemental Order." The order, inter alia, strictly limited and delineated the opportunities for either the parties or individual officers to challenge the promotional examinations. It recognized that "[t]he review procedures afforded ... individual officers[ ] have been recurrent sources of delay in the administration of examinations and the adoption of eligibility lists. The parties agree that, unless altered, those procedures are certain to disrupt the Plan and prevent its implementation within the remaining life of the Decree."
 
 
 6
 Pursuant to the supplemental order, "[i]ndividual officers may protest/appeal only with respect to alleged irregularities in the administration of the examination itself, typographical errors, computational errors in scoring and the listing on a tentative eligible list of a person or persons allegedly ineligible for promotion." However, the order also provided that:
 
 
 7
 Protests/appeals by individual officers shall not be allowed nor entertained with respect to the appropriateness or adequacy of the various components of a particular examination procedure including, but not limited to, the adequacy of [the] job analysis, the examination announcement and the terms thereof, the setting of component weights and cut-off scores, the validity and/or job relatedness of an examination in whole or in part, and the development, establishment, accuracy[,] and appropriateness of the scoring key or keys. Any such matters can only be raised by the parties.
 
 
 8
 In 1989, most of the required promotions still had not been made because of delays in the test development process. Consequently, the district court held a hearing, after which it ruled that the decree would not terminate by its own terms, but rather only with the court's approval.
 
 
 9
 A City-retained expert, in consultation with experts retained by the other parties, developed the Q-60 lieutenant's examination over approximately a four-year period. In April 1993, the examination was given to 255 candidates. In August 1993, the City provided the parties and their experts with the scores for the examination by race and gender, which reflected that the examination adversely impacted Blacks, but not any other group, including Caucasian males.
 
 
 10
 On September 15, 1993, Zimmerman received his score which ranked him 193 out of 255 candidates. He filed an administrative protest in accordance with the procedures set forth in the supplemental order. Zimmerman then moved to intervene on an expedited basis, filing his motion with the district court on October 6, 1993. He alleged that because the examination was arbitrarily scored, ineligible candidates were allowed to take the examination, and because the examination was not job-related, Caucasian males as a group were adversely impacted.
 
 
 11
 At the hearing on October 22, 1993, the district court denied his motion to intervene, finding that: (1) the supplemental order barred Zimmerman's individual challenge to the examination; (2) the Q-60 examination did not have an adverse impact on Caucasian males; (3) Zimmerman lacked a redressable injury, because his low score made him ineligible for promotion;[1] (4) Zimmerman's interests were adequately represented by the POA; and (5) intervention would cause "inevitable" delay. This appeal followed.
 
 DISCUSSION
 A. Intervention as a Matter of Right
 
 12
 Under Federal Rule of Civil Procedure 24(a)(2), an applicant is entitled to intervene as a matter of right if: (1) the application for intervention is timely; (2) the applicant has an interest in the transaction which is the subject matter of the pending litigation; (3) the applicant's ability to protect his interest would be impaired unless intervention were allowed; and (4) the applicant's interest is not adequately represented by the present parties. United States ex rel. McGough v. Covington Tech. Co., 967 F.2d 1391, 1394 (9th Cir.1992); Yniguez v. Arizona, 939 F.2d 727, 731 (9th Cir.1991). Unless the applicant satisfies all four criteria, intervention must be denied. Yniguez, 939 F.2d at 731. We review de novo the denial of a motion to intervene pursuant to Rule 24(a)(2). Id.
 
 
 13
 To the extent that Zimmerman wishes to challenge the design and administration of the lieutenant's examination, his application is timely. He could have no knowledge of any alleged testing improprieties until after the test was administered.[2]
 
 
 14
 Zimmerman, however, also wishes to challenge both the consent decree and the district court's interpretation of it; specifically, the restriction of individual officers' rights to challenge the testing procedure and the extension of the decree's expiration date.[3] Zimmerman, a police officer since 1977 and member of the POA, should have brought this challenge when the supplemental order was entered in 1989, and therefore, his motion to intervene on these bases is untimely. Compare Officers for Justice v. Civil Service Commission of San Francisco, 934 F.2d 1092 (9th Cir.1991) (in same litigation, officer moved to intervene one month after POA changed its position that the decree automatically expired in 1989).
 
 
 15
 Appellees correctly argue that Zimmerman lacks standing to raise his claims of racial discrimination. On appeal, Zimmerman concedes that Caucasian males were not adversely impacted by either the design or administration of the test. Furthermore, as a Caucasian male, he cannot assert a claim of discriminatory treatment. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).
 
 
 16
 However, Zimmerman also alleges that the test was improperly designed and administered. To this extent, Zimmerman asserts a protectable interest in the litigation. See Officers for Justice v. Civil Service Comm'n, Civ. No. 73-0657, slip op. at 4 (N.D.Cal. July 25, 1991) (finding that "the subject of the consent decree is the promotion of San Francisco police officers within the department," and therefore prospective intervenor, as a police officer, "asserted a sufficient interest relating to the subject matter of the litigation").[4]
 
 
 17
 Although Zimmerman meets the first two requirements for intervention of right, he does not meet the last two. Denying his application to intervene will not preclude him from protecting his interest in valid test design and administration. The supplemental order sets forth adequate procedures through which Zimmerman may raise his allegations of scoring errors and the testing of ineligible candidates.[5]
 
 
 18
 The only interest Zimmerman cannot protect outside these proceedings is ensuring that the promotion examination is job-related, because such an issue may only be raised by a party, pursuant to the supplemental order. However, this incorrectly assumes that parties to the litigation, including the POA, inadequately represent Zimmerman.
 
 
 19
 All of the parties to the decree, but most particularly the POA, are willing, and certain, to ensure that the lieutenant's examination is valid and job-related. See California v. Tahoe Regional Planning Agency, 792 F.2d 775, 779 (9th Cir.1986). Zimmerman has failed to suggest any credible reason why he and the POA would not share a common interest in ensuring union members are promoted through a fair and just testing procedure. Id. Nor has Zimmerman shown that he will offer any necessary element to the proceedings that the other parties would neglect. Id. Zimmerman has thus failed to make the required "minimal showing" of inadequacy. Id.
 
 
 20
 In sum, the district court properly denied Zimmerman's motion to intervene as a matter of right.
 
 B. Permissive Intervention
 
 21
 "Where a would-be intervenor does not demonstrate interests sufficiently weighty to warrant intervention as of right, the court may nevertheless consider eligibility for permissive intervention under Fed.R.Civ.P. 24(b)(2)." Garza v. County of Los Angeles, 918 F.2d 763, 777 (9th Cir.1990), cert. denied, 498 U.S. 1028 (1991). A district court has "broad discretion" to grant or deny permissive intervention. County of Orange v. Air California, 799 F.2d 535, 539 (9th Cir.1986), cert. denied, 480 U.S. 946 (1987).[6]
 
 
 22
 Even assuming Zimmerman has met all of Rule 24(b)'s prerequisites, the district court did not abuse its discretion in barring his intervention. The certainty of prejudice to the parties, as well as judicial economy, weigh heavily against allowing Zimmerman to intervene. See Venegas v. Skaggs, 867 F.2d 527, 530-31 (9th Cir.1989) (court must consider equitable factors of judicial economy, adequacy of representation, and prejudice), aff'd sub nom. Venegas v. Mitchell, 495 U.S. 82 (1990). The POA continues to adequately represent Zimmerman's interests, and thus denying him intervention will not prejudice him. On the other hand, permitting Zimmerman's intervention would prejudice the existing parties to the litigation. These proceedings, which have consumed decades of the court's and parties' time, are finally nearing conclusion. To allow Zimmerman to intervene at this late date would, as the district court found, "inevitably" prejudice the rights of the parties, and further complicate and delay this highly complex case.[7]
 
 
 23
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The City proposed, and the court eventually approved, a plan to promote the first 23 officers on the Q-60 list using a "sliding band," whereby candidates ranking 24 to 130 would be viewed as equally qualified and promoted on the basis of an interview and consideration of experience, training, professional certification, community service, education, and affirmative action goals. Zimmerman has not raised "banding" as an issue on appeal
 
 
 [2]
 The district court apparently came to the same conclusion, telling appellees, "I'm not really--not really persuaded by a timeliness type of argument."
 
 
 [3]
 Zimmerman never raised these issues before the district court
 
 
 [4]
 Appellees also contend Zimmerman lacks standing because his examination score was so low that rescoring would be futile. However, if the administrative errors were as gross as Zimmerman alleges, rescoring or retesting might make him eligible for promotion
 
 
 [5]
 We express no view on the constitutionality of these procedures. See note 7, supra. We note, however, that Zimmerman has never alleged that the procedures set forth in the supplemental order were inadequate to protect his interests. Regardless, even absent these procedures, the POA adequately represents Zimmerman's interests in test design and administration. See supra
 
 
 [6]
 Suggesting we review the permissive intervention issue de novo, Zimmerman cites to Beckman Indus., Inc. v. International Insur. Co., 966 F.2d 470, 472 (9th Cir.1992). Beckman is inapposite. Unlike Beckman, this case does not require us to interpret Rule 24(b)
 
 
 [7]
 Because we hold that Zimmerman was properly denied intervention, we need not address whether the supplemental order is unconstitutional. In addition, we find that the district court did not err in denying Zimmerman the opportunity to file a reply brief. Zimmerman invited any error by stipulating to an expedited briefing schedule. He also had the opportunity to reply to opposing arguments at the motion hearing