**In re EAGLE ENTERPRISES, INC. and Liberty Recovery Systems, Inc., Debtors.**

**Mitchell W. Miller, as Trustee for The Estates of Eagle Enterprises, Inc. and Liberty Recovery Systems, Inc., Plaintiff,**

v.

**USA Waste Services, Inc. (Now Known as Waste Management Inc.), Defendant.**

**Bankruptcy Nos. 98–11297 SR, 98–11298 SR. Adversary No. 99–501.**

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 8, 2001.

See also 205 B.R. 83.

Michael A. Bloom, Morton R. Branzburg, Stephen M. Calder, Kevin J. Carey, John T. Carroll, III, Cozen & O'Connor, Philadelphia, PA, Samuel Conte, Kenilworth, NJ, David S. Elkind, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, Leslie B. Gaynus, Comm. of PA., Dept. of Labor & Industry, Harry J. Giacometti, Maxwell P. Gorson, Philadelphia, PA, Peter J. Gutowski, Freewill, Hogan & Mahar LLP, New York City, Adam H. Isenberg, Centre Square West, Larry M. Keller, Laurie A. Krepto, Pepper Hamilton LLP, Michael R. Lastowski, Philadelphia, PA, Pauline K. Morgan, Wilmington, DE, Robert I. Morris, Philadelphia, PA, Gary D. Sesser, Carter, Ledyard & Milburn, New York City, Joel C. Shapiro, Blank Rome Comisky & McCauley LLP, Philadelphia, PA, J. Stephen Simms, Baltimore, MD, Joseph L. Steinfeld, Jr., Insolvency Financial & Collection Legal Services, Fairfax, VA, John F. Stoviak, Saul, Ewing, Remick & Saul LLP, Richard Q. Whelan, Sandra H. Young, Philadelphia, PA, for creditor.

Edward J. Didonato, Philadelphia, PA.

Mark E. Felger, Cozen & O'Connor, Wilmington, DE, for debtor.

## OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

### Introduction.

Before the Court is a Motion by Plaintiff/Trustee Mitchell W. Miller, Esquire for reconsideration of the Court's Opinion and Order of November 17, 2000 denying the Trustee's Motion for Leave to Amend Complaint and add new counts for fraudulent inducement and tortious interference with contract. The Motion is opposed by Defendant, USA Waste Services, Inc. Oral argument was heard January 8, 2001 and the matter has been briefed by the parties. For the reasons discussed herein the Motion will be denied.[1]

---

1. The Trustee's moving papers actually speak only to the Court's ruling as to the Trustee's

The Trustee makes three arguments in support of the present motion. The Court will consider them in the order they are raised. First, the Trustee contests the Court's conclusion that the claims which the Trustee seeks to add are barred by the applicable statute of limitations. In this respect, the Trustee maintains that the claims in question can be seasonably brought because they arise from the same transaction or occurrence as underlies the claims stated in the Trustee's original complaint. As a consequence, says the Trustee, the new claims "relate back" to the date the existing claims were instituted, as the phrase relate back has been construed under Fed.R.Civ.P. 15(c), such that their assertion now would be timely, the statute of limitations notwithstanding. On this score, the Trustee argues specifically that the Court erred in not considering or properly applying the relation back doctrine. Having reviewed this question, the Court disagrees.

As a threshold matter, what is particularly striking about the Trustee's position is his insistence that his earlier amendment motion was all along predicated on Fed.R.Civ.P. 15(c) and that this issue was simply ill considered by the Court in connection with the earlier proceeding. This proposition is totally incorrect. The Trustee's amendment motion sought relief under *Fed.R.Civ.P. 15(a)* only. There was no reference in the Trustee's Motion papers or his voluminous memoranda of law to the applicability of Fed.R.Civ.P. 15(c). Rather, there was always a clear, candid acknowledgment by the Trustee that, other things being equal, the statute of limitations applicable to the claims he sought to add had expired. The Trustee relied on the "discovery rule" exception and argued that the running of the statute of limitations had been equitably tolled. Indeed,

the Trustee expressly confirmed at oral argument that without the benefit of the discovery rule, his motion was doomed. This point was captured in the following exchange.

> The Court: Well now, Mr. Regan, ... I don't think you quarrel with the fact that unless you get the benefit of the discovery rule, you lose here.
>
> Mr. Regan: Correct
>
> The Court: You would agree with that?
>
> Mr. Regan: I agree with that [2]

It thus came as something of a surprise to see the Trustee contend, as he does here, that he had heretofore "expressly set forth the factual and legal basis on which the relation back doctrine should have been applied" and that "... the Trustee could not have more clearly stated his position that the new fraud claims arise from the same transaction that forms the basis of the original complaint." (Motion for Reconsideration—Trustee Reply Brief at pages 5–6) Even giving Trustee's counsel considerable license as an advocate, this argument surely does more than simply overstate the case. The Defendant, for its part, contends that the Trustee is actually attempting to change his position on an important issue previously conceded. The Court is constrained to agree. The question, therefore becomes whether the Trustee may legally do so.

■ Neither the Trustee's reconsideration motion, nor his supporting memorandum of law, expressly state the statutory basis upon which the Trustee seeks the present review. The authorities cited by the Trustee in his brief, however, all relate to motions for reconsideration filed under F.R.C.P. 59(e) or 60(b). The Trustee, in fact, originally offered the well known standard of review applicable to such motions as the applicable standard herein,

new fraud claims. These accordingly are what the Court addresses herein.

**2.** Transcript of Oral Argument, Oct. 12, 2000, at p. 29:10–15. The Court here expressly rejects the Trustee's contention that this con-

cession was limited in effect to a particular point being discussed prior to the cited passage. This argument is unsupported by a fair reading of the relevant portion of the transcript and the record in its entirety.

that is to say, a motion for reconsideration is to be granted where it is necessary to correct a clear error of law or to prevent manifest injustice. (Trustee Reconsideration Motion—Trustee Memorandum of Law at page 6) In its response, the Defendant in turn observed certain well known limitations upon Rule 59(e) motions; to wit: that the scope of a Rule 59(e) motion is narrow, that such motions are to be sparingly granted, and that Motions for reconsideration under Rule 59(e) are not at the disposal of an unsuccessful party to rehash arguments and facts previously presented. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3rd Cir.1985); *Keyes v. National Railroad Passenger Corporation*, 766 F.Supp. 277, 280 (E.D.Pa.1991). The decision whether to grant or deny a Rule 59(e) motion is entrusted to the sound discretion of the Court. *Matter of Prince*, 85 F.3d 314, 324 (7th Cir.1996).

■ Having received clear indication from the Trustee that he was preceding under Rule 59(e), it thus came as yet another surprise when the Trustee in his reply brief shifted gears once again, arguing for the first time that his motion herein is premised on Fed.R.Civ.P. 54(b), which deals with the revision of interlocutory orders. In keeping with this the Trustee offered a new and significantly different view as to the applicable standard of review governing the present motion, arguing that under Fed.R.Civ.P. Rule 54(b) the Court has the inherent power to reconsider interlocutory orders when it is "consonant with justice to do so." Case law, says the Trustee, makes clear that while reconsideration might be denied under the stringent standards applicable to motions under Rule 59(e), or 60(b), relief may still be granted in the same factual context under the more liberal consonant with justice standard. The Trustee's point that Fed.R.Civ.P. 54(b) applies to this motion to reconsider the Court's November 17, 2000 Order, due to its interlocutory nature, is well taken. The fact that the Court possesses the power to revisit an earlier un-

certified adjudication, however, does not mean that the Court should or must do so. In a complex multi-claim action, early adjudications are often essential to effective management of the action. If motions based on the Court's power under Rule 54(b) could compel courts to revisit those adjudications, much of the advantage in making the early rulings would be lost. It is thus well established that a court should not depart from its earlier decision without good reason. Informing its determination in this respect should be consideration of the doctrine of judicial estoppel, as well as the potential for prejudice to other parties. 10 MOORE'S FEDERAL PRACTICE § 54.25[4] (Matthew Bender 3rd ed.) As discussed, *infra*, an analysis so informed convinces the Court that relief here is unwarranted.

To begin on what may be a small note, the Trustee's assertion that his arguments herein have always proceeded on the basis of Fed.R.Civ.P. 54(b). (See Trustee Reply Brief—Footnote 1 at page 5) hardly withstands scrutiny. It seems perfectly clear, in other words, that it belatedly came to the Trustee's attention that a different rule of procedure than Fed.R.Civ.P. 59(e), with perhaps a less stringent standard of review, was available to him. Realizing as much, the Trustee acted accordingly. While this is perfectly understandable, it must be noted nevertheless that the Trustee's refusal to acknowledge as much, and his rather thin attempt to distance himself from his mistake by simply pretending it did not exist, is counter-productive, for ultimately it serves only to undermine the Trustee's credibility *vis a vis* larger issues with which he must contend.

■ In this respect, the Court reiterates its categorical rejection of the wholly unpersuasive argument that the Trustee's "relation back" contentions were fully pressed but ill considered in the context of his original motion. On the contrary, the issue was not joined on the merits by the Trustee. It is perhaps in recognition of the weakness of this argument that the

Trustee moves quickly from it to pose the separate question of whether reconsideration on the basis of Fed.R.Civ.P. 15(c) should be afforded irrespective of whether the issue of relation back had previously been raised by him. The Trustee, of course, answers this question in the affirmative. The Court, however, concludes otherwise.

As noted, the issue of relation back under Rule 15(c) was not argued by the Trustee. As with the case of the proverbial dog that did not bark, however, one must not only note the non-occurrence of the fact, but also ask why. The absence of debate over whether the new claims proposed by the Trustee arose from conduct set forth in the original breach of contract complaint, such as would support an entitlement to relief under Fed.R.Civ.P. 15(c), was not simply an oversight, as the Trustee at this juncture implies, for the recognition of a possible nexus between these claims was clearly not something of which the Trustee lately became aware. On the contrary, in both his papers and at oral argument, Trustee's counsel made quite plain that the interplay of the Trustee's contract and would-be fraud claims had been closely examined by counsel from the very earliest days of his engagement. Even accepting the Trustee's argument that it was only through discovery that the Trustee ultimately gleaned facts sufficient to support his suspicions of fraud, it is clear that the Trustee was cognizant of the statute of limitations problem he faced and had pinned his hopes on the discovery rule as the means of overcoming it. In this vein it is obvious that the Trustee felt and continues to feel strongly as to the merits of his position on the discovery rule issue. Indeed, Trustee's counsel once candidly stated in open court that he could not possibly even imagine a scenario where the Trustee's Motion to Amend Complaint would be denied. (Transcript October 12, 2000 hearing at pages 9–10) Whether such hubris led the Trustee to abandon recourse to a relation back argument may be debatable. What seems clear, however, is

that this legal theory was foregone and a different legal theory was pursued. Even under a "consonant with justice" standard of review, the Court does not see in these circumstances grounds sufficient to warrant relief. Indeed, this seems little more than an attempt by the Trustee to secure a "second bite at the apple."

The Court, in particular, rejects as inapposite those authorities cited by the Trustee to the effect that any fraud claim may be added by amendment to an existing contract claim on a relation back basis where the alleged fraud is claimed to arise from the same transaction. While this general legal proposition no doubt has merit, it is not without limitation. Here, not only did the Trustee fail to raise the relation back argument despite repeated opportunity to do so, he implicitly acknowledged the unavailability of the theory to him by expressly acknowledging his need for a favorable ruling on the discovery rule issue in order to sustain his motion to amend complaint. To permit the Trustee to abruptly alter his course on this important issue is not lightly to be sanctioned. Indeed, the doctrine of judicial estoppel exists to prevent such inconsistent posturing. The Court finds the doctrine of judicial estoppel appropriately invoked here.

■ Simply stated, the doctrine of judicial estoppel bars people from taking inconsistent positions. *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.,* 910 F.2d 1540, 1547 (7th Cir.1990). The doctrine of judicial estoppel has not been uniformly adopted by courts. For example, it is not recognized at all in the Tenth Circuit. *See, e.g., Webb v. ABF Freight System, Inc.* 155 F.3d 1230, 1242 (10th Cir.1998). It has long been recognized, however, in this circuit. *Scarano v. Central R.R. Co. of New Jersey,* 203 F.2d 510, 513 (3rd Cir.1953) (Judicial estoppel looks to the relationship between the litigant and the Court. "It prevents a party from 'playing fast and loose with the Court' by

using intentional self contradiction . . . as a means of obtaining unfair advantage.")

▬▬ The Trustee opposes application of the doctrine of judicial estoppel, arguing that the doctrine applies only where counsel changes his position with respect to matters of fact previously proffered to the Court, but not to a change in a legal position argued to the Court. The Trustee's major premise (i.e., facts v. law) seems reflective of the majority position, although courts are certainly not unanimous on the point. *See, e.g., Continental Ill. Corp. v. Commissioner,* 998 F.2d 513, 518 (7th Cir. 1993) and *Yniguez v. Arizona,* 939 F.2d 727, 738 (9th Cir.1991) and the Third Circuit Court of Appeals does not seem to have squarely addressed that narrow question. Our Circuit Court has made clear, however, that application of judicial estoppel requires that each case be decided on its own particular facts and circumstances, expressly eschewing any formulaic approach. *Motley v. New Jersey State Police,* 196 F.3d 160, 163 (3rd Cir.1999). The analysis follows the two pronged framework set out in *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355 (3rd Cir.1996); to wit: the Court must ask 1) is a party's position inconsistent with a position previously asserted and, if so, 2) did the party assert either or both positions in bad faith, i.e., with intent to play fast and loose with the Court. *Id.* at 361. Analyzing the present question under these guidelines the Court finds against the Trustee.

To begin, the Court reiterates that the Trustee has clearly changed the legal position offered in support of his Motion to Amend Complaint. Moreover, even the Trustee's minor premise, i.e., that a law vs. facts safe harbor exists here, is flawed. The Trustee's maneuver certainly involves more than the simple proffer of an alternative legal theory. In a subtle way the Trustee's request goes beyond that. The Trustee's present change of position cannot be characterized benignly as the Trustee would do, for in the legal position he had adopted in connection with his motion to amend (i.e., reliance on the discovery rule) the Trustee simultaneously adopted and stressed his own unique version of this factually complex case. Through his resort to the discovery rule exception the Trustee staked out numerous claims of fraudulent concealment on the part of the Defendants. These claims are inextricably interwoven both with the Trustee's putative fraudulent inducement claims, as well as with his breach of contract claims. Factual allegations incident to the assertion of concealment might in varying degrees serve to buttress and/or confirm the Trustee's claims of fraudulent inducement or breach of contract. It may not be possible to precisely correlate the relationship at this juncture, however it is readily apparent that inherent in the Trustee's legal position as to the discovery rule are numerous matters of fact which the Trustee seemingly now minimizes, wholly relegates to the dust pile, or as to which the Trustee effectively reverses course. It is unfair to insist that the Defendant or the Court guess as to the Trustee's state of mind.

More significantly, the Defendant notes that in his original complaint the Trustee alleges a contract breach on the part of USA Waste based on its alleged failure to provide Debtor, Eagle Enterprises, Inc. with 3500 tons of municipal solid waste per day to transport. USA Waste points out that there are no allegations at all in the original complaint which refer to the gravamen of the Trustee's fraud contentions as set forth in his proposed amended complaint. (i.e., a truckload restriction at USA Waste's Virginia port facility and inadequate tipping equipment at USA Waste's landfill). This is not altogether surprising. Indeed, the Trustee himself has stressed that virtually all of the salient facts which give rise to the Trustee's fraud allegations were wholly unknown to him, or anyone else supportive of the Plaintiff's position herein, until long after the Trustee's original complaint was filed. (Trustee's Motion to Amend Complaint—Reply Brief at p. 7). Yet, if this be true it is fair to question how the Trustee can contend that the De-

fendant in this lawsuit nevertheless had adequate notice of forthcoming fraud claims on the basis of his original pleading. The Trustee not only reduces the chronology on which he so heavily relied in connection with his discovery rule argument to an irrelevancy, he seems now to assert basically that any claim of fraud that so much as refers to the contract between the Debtors and USA Waste is fair game for addition to this lawsuit, since such claim, at bottom, would relate to the parties' written agreement. USA Waste urges that in all of this grounds for judicial estoppel are evidenced. The Court agrees. The Trustee's relation back argument seems no more than a belated strategy adopted in the face of the Court's unfavorable ruling on the discovery rule issue, as such his tactics are reflective of bad faith, which is to say that they are indeed "fast and loose."

It is unfair to require the Defendants or the Court to sit by as the Trustee adjusts his legal theory to the latest ruling of the Court. The Defendant, moreover, argues that it will prejudiced by the Trustee's change in position, and notes *inter alia,* that enormously extensive discovery has already been completed, that discovery is now closed, and that a dispositive motion (summary judgment) is pending. If that Motion is resolved adversely to the movant, this matter is ready for trial. The Court concurs that under these circumstances additional indicia of unfairness also attend the Trustee's request. Prejudice being apparent, and the doctrine of judicial estoppel being appropriately called into play, the Court will bar the Trustee's attempted recourse to the doctrine of relation back as the possible means by which to preserve his otherwise time barred fraud claims.

 Having reached this conclusion, the Court need not separately address in detail various arguments the Trustee makes which go to the question of whether the assertion of a relation back defense would succeed if the same were otherwise to go forward. The Court will close, however, by noting that for the very same reasons discussed above the assertion of the Trustee's Rule 15(c) argument has significant problems on its merits. Rule 15(c) allows a party to amend their pleading despite the running of an applicable State statute of limitations when other parties are sufficiently on notice of the facts and claims that gave rise to the proposed amendment. Courts historically are liberal in the exercise of their discretion to permit amendments. Once again, however, there are limitations, and the application of Rule 15(c) is not mechanical. *Compuwill Express Inc. v. ATX Telecommunications Services Ltd.,* 2000 WL 694780 at *6 (E.D.Pa.)

 The Trustee's proposed amendment can in no way be described as minor. It does not seek to correct mere technical deficiencies or to amplify a claim attempted to have been set forth in the Trustee's original pleading. Rather, it proposes to add a significant and entirely distinct new claim. The circumstances in which the Motion arises thus warrant scrutiny.

There is no basis here on which to argue that notice of fraudulent inducement is to be gleaned from the text of the original complaint. Indeed, the text of the complaint quite unambiguously couches the Trustee's cause of action as a straightforward claim for breach of contract. Moreover, earlier in the case Trustee's counsel in open court disavowed intentions to pursue a fraud claim, and opposed efforts by an estate creditor to institute a similar fraud action. In later discovery, the Trustee reconfirmed that his claim sounded only in contract. As noted above, the Trustee has disclaimed possession of knowledge sufficient to have brought a fraud claim on a timely basis. To insist in the face of this, that the Defendant at all times knew or should have known that the entirety of the parties' transaction was going to be "sifted," such that a fraud claim on the part of the Trustee should have been anticipated, is unconvincing and certainly not a conclusion to be arrived at

from a review of the record or a fair reading of the Trustee's original complaint. USA Waste argues that yet another case for judicial estoppel is made out in this context. That argument has probable merit, although the Trustee's relation back argument founders without consideration of that point. The addition of new theories of recovery is permissible only when the new claims are not based on events different from or in addition to those set out in a parties' original complaint. An amendment will not, however, relate back under Rule 15(c)(2) in the following situation:

> [I]f the alteration of the original statement is so substantial that it cannot be said that the defendant was given adequate notice of the conduct, transaction, or occurrence that forms the basis of the claim or defense, then the amendment will not relate back and will be time barred if the limitations period has expired.

> 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, Civil 2d § 1497 (1990).

For the reasons discussed above, the Court concludes that the situation described above exists here. The Court thus would be disinclined to permit the Trustee's proposed amendment on a relation back basis even absent the adverse findings made herein on threshold questions of prejudice and judicial estoppel.

The Trustee's second argument in support of his Motion for Reconsideration is that in the course of evaluating the merits of the Trustee's discovery rule argument, the Court erred in applying an inquiry notice versus actual notice standard to the Trustee's allegations of fraudulent concealment. The Court has considered but rejects this argument.

The Trustee cites the Court to *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480 (D.C.Cir.1989) in support of his position. Review of that decision, however, reveals it to be essentially, if not entirely, consistent with controlling law in this jurisdiction on the issues of the discovery rule and fraudulent concealment. That is

to say that an inquiry notice standard normally applies to a plaintiff's attempt to invoke the discovery rule in order to toll the limitations period on a fraud claim. *Hayward v. Medical Center of Beaver County*, 530 Pa. 320, 325, 608 A.2d 1040, 1043 (1992); *Pennsylvania Ship Supply, Inc. v. Fleming International, Ltd.*, 2000 WL 748141 at *3, 2000 U.S. Dist. LEXIS 7955 at *10 (E.D.Pa. June 9, 2000)("when the underlying cause of action sounds in fraud, ... the statute of limitations is tolled until the plaintiff learns or reasonably should have learned through the exercise of due diligence of existence of the claim"); *accord, Beauty Time, Inc. v. VU Skin Systems, Inc.*, 118 F.3d 140, 148 (3rd Cir.1997) ("discovery rule" applies in Pennsylvania); *Gee v. CBS, Inc.*, 471 F.Supp. 600, 622 (E.D.Pa.), *aff'd*, 612 F.2d 572 (3d Cir.1979). For statute of limitations purposes, a claimant need only be put on inquiry notice by storm warnings of possible fraud. *Beauty Time, Inc. v. VU Skin Sys., Inc.*, 118 F.3d at 148 *(citing Ciccarelli v. Gichner Sys. Group, Inc.*, 862 F.Supp. 1293, 1301 (M.D.Pa.1994)); *Gurfein v. Sovereign Group*, 826 F.Supp. 890, 918 (E.D.Pa.1993). Further, where fraudulent concealment is alleged as the basis on which to contest the existence of legally sufficient notice, the law requires the plaintiff to demonstrate the existence of an affirmative and independent act of concealment such as would divert or mislead the plaintiff from discovering an injury or its cause. *Bohus v. Beloff*, 950 F.2d 919, 925 (3d Cir.1991); *Glaziers & Glass Workers Union Local No. 252 Annuity Fund v. Janney Montgomery Scott Inc.*, 155 F.R.D. 97, 101 (E.D.Pa.1994); *Compuwill Express, Inc.*, 2000 WL 694780 at *9 (E.D.Pa.); *In re TMI*, 89 F.3d 1106, 1117–18 (3rd Cir.1996); *Miller v. Janney Montgomery Scott, Inc.*, 1998 WL 398146 at *2 (E.D.Pa.). The thrust of the Trustee's second argument in actuality is an assertion that the Court erred in failing to conclude that the Trustee had met the foregoing evidentiary burden. This argument, however, fails for at least two reasons.

First, despite his present contentions to the contrary, the Trustee heretofore offered no evidence of any affirmative or independent act of concealment as to the two facts which undergird his putative fraud claim. (i.e., truckload restriction and tipper limitation). It is thus fair to observe that, to this extent, the Trustee is simply attempting to reargue a point previously lost. This, of course, is not the purpose of a motion for reconsideration regardless of what stage in a proceeding it is made. Second, although the Trustee in the context of the present motion does for the first time endeavor to address in specific the issue of fraudulent concealment, he fails to meet his evidentiary burden. On this score, the Trustee argues that in conversation USA Waste employee Ben Victory intentionally misled Debtor/principal Robert Ferro by citing operational problems on the Debtor's part as the reason for shortfalls in contractual waste tonnage deliveries, rather than conceding that the true reasons were USA Waste's own truckload and tipper problems. Even overlooking the untimeliness of the Trustee's argument, it still breaks down.

As USA Waste notes, the truckload restriction was a matter of public record and was set forth in a permit issued to USA Waste by the local municipality. Moreover, for the reasons discussed in its prior opinion, the Court has concluded that the Debtor, through its managerial employee Lawrence Jones, had *actual* knowledge of the truckload restriction. Similarly, with respect to the tipper, the Court has previously concluded that not only Jones, but no doubt Ferro as well, was on notice of the inadequacy of the Defendant's single tipper, each having personally witnessed it himself. It cannot be plausibly argued, therefore, that either of these constraints was concealed at all, let alone fraudulently concealed. The Trustee's Motion as premised on his second argument is thus without merit.

The Trustee's third argument represents his most extensive revisitation of adjudicated issues in the hopes of achieving a different result. It bears noting, therefore, that in its course, the Trustee has presented absolutely no *newly discovered* evidence. Rather, the Trustee reiterates arguments previously considered but rejected by the Court, and offers other evidence and arguments previously available to him but not used. It of course cannot be overemphasized that this approach is sharply at odds with proper procedure.

The thrust of the Trustee's third argument, in any event, is twofold. First, the Trustee maintains that the Court misinterpreted the 1997 letter from landfill manager Lee Wilson to Robert Ferro, arguing that this letter did not provide inquiry notice of the landfill truck restriction, such as would undermine the Trustee's recourse to the discovery rule—tolling exception. On this point, the Trustee suggests that the Court has misconstrued the text of the letter, and offers his own counsel's affidavit to the effect that he (i.e., counsel) had read the letter and understood it differently given what he knew about the case. The Court views the affidavit as a dubious gambit and will not engage in such debate. For the reasons stated in its original opinion, the Court stands by its conclusion as to the import of the subject correspondence, and its effect on the Trustee's Motion to Amend Complaint.

The second contention of the Trustee's third argument is that the Court gave inappropriate weight to the September 8, 2000 affidavit of the Debtor's landfill site manager, Lawrence Jones in concluding that the Debtor, through Jones, had actual notice of the truckload restriction at the USA Waste landfill. In support, the Trustee renews an old argument and makes a new one. As to the former point, the Trustee reiterates his view that Jones' credibility is suspect because his deposition testimony is allegedly at variance with his affidavit. As to the latter point, the Trustee now adds the new challenge of bias on the part of Jones, the same alleged to flow from business dealings between Jones' brother, Stephen Jones, and USA Waste. Once again, leaving aside the obvious procedural infirmities, the Court finds

in neither of these arguments cause to change its original ruling.

It is true that the Jones affidavit offers more detail than is to be found in the transcript of his deposition. The explanation for this, however, appears to lie mainly in the fact that the relevant deposition questioning of Jones on the point in issue (i.e., a truckload restriction) was abbreviated. Moreover, it is an exaggeration to say that the two sets of sworn testimony are even inconsistent. While the Court notes that in his affidavit Jones describes a precise daily truckload restriction (i.e., 125 trucks), whereas in his deposition he previously stated that he could not recall the exact number, in each instance Jones nevertheless confirms clearly his awareness that a specific numerical truckload restriction existed. This is by far the more important point to take away for purposes of analysis of inquiry and/or actual notice of the restriction, and the Court finds nothing sinister in Jones' inability to recall the exact number during his oral examination.

The Trustee also asserts, for the first time here, that undue weight was given to the Jones affidavit because Jones is an "interested" witness. In this respect, the Trustee alleges that Jones' brother has submitted a bid to USA Waste on an enormous waste shipment contract thereby creating a substantial incentive for Jones to file an affidavit favorable to USA Waste. This, of course, is a very serious charge, making its belatedly assertion at first blush puzzling. The evidence offered by USA Waste in rebuttal seems to at least partially explain matters, for it effectively refutes the Trustee's insinuation.

The Trustee's allegation is premised on a short passage from the deposition of Stephen Jones in February 2000 wherein he refers to "having a proposal in front of USA Waste" for the transport of waste from New York. There are no details beyond this in the deposition, nor have any relevant supporting documents been produced herein. In response, however, USA Waste has offered an affidavit from an employee in its accounting department which states that the proposal referred to in the deposition of Stephen Jones was indeed for barging waste from New York, but that the proposal was rejected by USA Waste "well before" September 8, 2000, that no other proposals from Jones' company were pending on September 8, 2000, and that by that date (i.e., September 8, 2000) Jones' company had in fact discontinued barging operations. This rather convincing and uncontradicted rejoinder makes the Trustee's allegations of bias seem little more than a hip shot, and the Court rejects it as such.

In conclusion, the Court has considered and reconsidered all arguments which the Trustee has advanced in support of his Motion for Reconsideration. Finding no grounds to change its original decision, the Trustee's Motion will be denied.