(Slip Opinion) OCTOBER TERM, 2021 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## CAMERON, ATTORNEY GENERAL OF KENTUCKY *v.* EMW WOMEN'S SURGICAL CENTER, P. S. C., ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 20–601.  Argued October 12, 2021—Decided  March 3, 2022

EMW Women's Surgical Center and two of its doctors filed a federal suit seeking to enjoin enforcement of Kentucky House Bill 454, legislation regulating the abortion procedure known as dilation and evacuation. Named defendants in EMW's lawsuit included two Commonwealth officials, the attorney general and the cabinet secretary for Health and Family Services.  EMW agreed to dismiss claims against the attorney general without prejudice.  The stipulation of dismissal specified that the attorney general's office reserved "all rights, claims, and defenses . . . in any appeals arising out of this action" and agreed to be bound by "any final judgment . . . subject to any modification, reversal or vacation of the judgment on appeal." App. 28–30.  The secretary remained in the case and defended the challenged law.  After a bench trial, the District Court held that HB 454 unconstitutionally burdens a woman's right to an abortion and issued a permanent injunction against the law's enforcement.

The secretary filed a notice of appeal.  While  the  appeal  was pending, Kentucky elected a new attorney general, petitioner David Cameron, and elected the former attorney general, Andrew Beshear, Governor.  Governor Beshear appointed a new secretary for Health and Family Services who continued the defense of HB 454 on appeal. Prior to oral argument before the Sixth Circuit, Attorney General Cameron entered an appearance as counsel for the new secretary.  A divided Sixth Circuit panel affirmed the District Court's judgment. The secretary then informed the attorney general's office that the secretary would not file a petition for rehearing en banc or a petition for a writ of certiorari challenging the Sixth Circuit panel's decision.  Two

days later, the attorney general moved to withdraw as counsel for the secretary and to intervene as a party on the Commonwealth's behalf. The secretary did not oppose that motion, but respondents did. The attorney general also filed a petition for rehearing en banc within the 14-day deadline for an existing party to seek rehearing. The Sixth Circuit denied the attorney general's motion to intervene. This Court granted certiorari limited to the question whether the Sixth Circuit should have permitted the attorney general to intervene.

*Held*: The Court of Appeals erred in denying the attorney general's motion to intervene. Pp. 4–13.

(a) This Court has jurisdiction to consider whether the attorney general's motion to intervene should have been granted notwithstanding respondents' contention that the motion was jurisdictionally barred. See *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 506. Respondents concede that a court of appeals generally has jurisdiction to consider a non-party's motion to intervene in a pending appeal. But respondents assert that a narrow subset of non-parties—those bound by the district court judgment—must file a timely notice of appeal to obtain appellate review and may not circumvent applicable jurisdictional time limits by filing a motion to intervene after the deadline for filing a notice of appeal has passed. Applying this theory, respondents contend that because the attorney general could have filed a notice of appeal but failed to do so within the time allowed by law, his motion for intervention should be treated like an untimely notice of appeal over which the Sixth Circuit lacked jurisdiction. Pp. 4–7.

(1) No provision of law limits the jurisdiction of the courts of appeals to entertain a motion for intervention filed by a non-party in this way, even assuming that party can be bound by the judgment that is appealed. Unless clear from its language, a statute or rule does not impose a jurisdictional requirement. *Henderson* v. *Shinseki,* 562 U. S. 428, 439. Here, respondents cite no provision that deprives a court of appeals of jurisdiction in the way they suggest, and no such supporting language can be found in 28 U. S. C. §2107, Federal Rules of Appellate Procedure 3 and 4, or any other provision of law. Pp. 5–6.

(2) This Court refuses to adopt what would essentially be a categorical claims-processing rule barring consideration of the attorney general's motion. When a non-party enters into an agreement to be bound by a judgment in accordance with the agreement's terms, it is hard to see why the non-party should be precluded from seeking intervention on appeal if the agreement preserves that opportunity. Here, the attorney general reserved "all rights, claims, and defenses . . . in any appeals arising out of this action." That easily covers the right to seek rehearing en banc and the right to file a petition for a writ of certiorari. And that agreement makes clear that the judgment to which

the attorney general agreed to be bound was the judgment that emerged after all appellate review concluded. Pp. 6–7.

(b) Turning to the question whether the Court of Appeals properly denied the attorney general's motion to intervene, the Court notes that no statute or rule provides a general standard to apply in deciding whether intervention on appeal should be allowed. Guided by the "policies underlying intervention" in the district courts, *Automobile Workers* v. *Scofield,* 382 U. S. 205, 217, n. 10, including the legal "interest" that a party seeks to "protect" through intervention on appeal, Fed. Rule Civ. Proc. 24(a)(2), the Court concludes that the Sixth Circuit erred in denying the attorney general's motion to intervene. Pp. 7–13.

(1) Resolution of a motion for permissive intervention is committed to the discretion of the court before which intervention is sought, see *Automobile Workers*, 382 U. S., at 217, n. 10; Fed. Rule Civ. Proc. 24(b)(1)(a). But a court fails to exercise its discretion soundly when it "base[s] its ruling on an erroneous view of the law," *Cooter & Gell* v. *Hartmarx Corp.*, 496 U. S. 384, 405, and that is what happened here. The Sixth Circuit panel failed to account for the strength of the Kentucky attorney general's interest in taking up the defense of HB 454 when the secretary elected to acquiesce. A State "clearly has a legitimate interest in the continued enforceability of its own statutes," *Maine* v. *Taylor,* 477 U. S. 131, 137, and a State's opportunity to defend its laws in federal court should not be lightly cut off. The importance of ensuring that States have a fair opportunity to defend their laws in federal court has been recognized by Congress. See 28 U. S. C. §2403(b); Fed. Rule Civ. Proc. 24(a)(1). These provisions—even if not directly applicable in this case because the secretary remained a party—reflect the weighty interest that a State has in protecting its own laws. Respect for state sovereignty must also take into account the authority of a State to structure its executive branch in a way that empowers multiple officials to defend its sovereign interests in federal court. See *Virginia House of Delegates* v. *Bethune-Hill*, 587 U. S. \_\_\_, \_\_\_. The unusual course that this litigation took should not obscure the important constitutional consideration at stake. Pp. 7–9.

(2) The panel also erred in its evaluation of the other factors that bear on all applications for appellate intervention. The panel's assessment of the timeliness of the attorney general's motion to intervene was mistaken. While an important consideration, timeliness depends on the circumstances, and the progression of the litigation is "not solely dispositive." *NAACP* v. *New York,* 413 U. S. 345, 366. Here, the most important circumstance relating to timeliness is that the attorney general sought to intervene "as soon as it became clear" that the Commonwealth's interests "would no longer be protected" by the parties in the

case. *United Airlines, Inc.* v. *McDonald,* 432 U. S. 385, 394. Because the attorney general's need to intervene did not arise until the secretary ceased defending the state law, the timeliness of his motion should be assessed in relation to that point in time. *NAACP* v. *New York,* 413 U. S. 345, distinguished. Pp. 10–12.

(3) The panel's finding that granting intervention would prejudice respondents was similarly flawed. While the attorney general's rehearing petition pressed an issue (third-party standing) not raised in the secretary's appellate briefs, allowing intervention would not have necessitated resolution of that issue. See, *e.g., McDonald*, 432 U. S., at 394. Moreover, respondents' loss of its claimed expectations around election of a Governor with a history of declining to defend abortion restrictions is not cognizable as unfair prejudice in the sense relevant here. Pp. 12–13.

831 Fed. Appx. 748, reversed and remanded.

ALITO, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, GORSUCH, KAVANAUGH, and BARRETT, JJ., joined. THOMAS, J., filed a concurring opinion. KAGAN, J., filed an opinion concurring in the judgment, in which BREYER, J., joined. SOTOMAYOR, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports.  Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 20–601

DANIEL CAMERON, ATTORNEY GENERAL OF KENTUCKY, PETITIONER *v.* EMW WOMEN'S SURGICAL CENTER, P. S. C., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[March 3, 2022]

JUSTICE ALITO delivered the opinion of the Court.

This case concerns a state attorney general's attempt to intervene in a federal appellate proceeding for the purpose of defending the constitutionality of a state law.  The issue arose after a panel of the United States Court of Appeals for the Sixth Circuit affirmed a decision holding a Kentucky statute unconstitutional.  The Kentucky official who had been defending the law decided not to seek any further review, but the Kentucky attorney general then moved to intervene for the purpose of taking up the defense.  The panel denied that motion, but we granted review.

I

In April 2018, the Kentucky Legislature adopted House Bill 454 (HB 454), which regulates the abortion procedure known as dilation and evacuation.  See Ky. Rev. Stat. Ann. §§311.787(1)–(2) (West 2021).  EMW Women's Surgical Center, a clinic that performs abortions, and two of its doctors filed this action in Federal District Court and sought to enjoin the enforcement of the new law.  Their complaint

named four defendants, and two of these, the attorney general and the cabinet secretary for Health and Family Services, played pivotal roles in the events that followed. The attorney general is a "[c]onstitutional State office[r]" who is independently elected and serves until a successor is elected and qualified. Ky. Const. §91. The secretary, on the other hand, is appointed by the Governor and serves at his pleasure. See Ky. Rev. Stat. Ann. §§11.065, 12.020, 63.080.

The plaintiffs agreed to the dismissal without prejudice of the claims against the attorney general (at that time Andrew Beshear) and one other defendant.[1] In agreeing to the dismissal of these claims, the attorney general reserved "all rights, claims, and defenses that [might] be available to him" and "specifically reserve[d] all rights, claims, and defenses relating to *whether he is a proper party in this action* and *in any appeals arising out of this action.*" App. 28–30 (emphasis added). It was also stipulated "that any final judgment in this action concerning the constitutionality of HB 454 [would] be binding on the Office of the Attorney General, *subject to any modification, reversal or vacation of the judgment on appeal.*" *Id.,* at 29–30 (emphasis added).

After the dismissal of these parties, the secretary remained in the case and conducted the defense of the challenged law.[2] Following a bench trial, the District Court held that HB 454 unconstitutionally burdens a woman's right to an abortion, *EMW Women's Surgical Center, P.S.C.* v. *Meier*, 373 F. Supp. 3d 807 (WD Ky. 2019), and it issued a permanent injunction against the law's enforcement. The secretary then filed a notice of appeal. App. 19.

While the appeal was pending, Kentucky held its 2019 general elections. Andrew Beshear won the race for Governor, and petitioner Daniel Cameron was elected to replace

---

[1] The executive director of the Kentucky Board of Medical Licensure.

[2] The fourth defendant was the Commonwealth's attorney for the 30th Judicial Circuit. He did not join the secretary's appeal. *EMW Women's Surgical Center, P.S.C.* v. *Friedlander*, 960 F. 3d 785, 792 (CA6 2020).

him as attorney general. On January 20, Governor Beshear appointed a new secretary for Health and Family Services, and the new secretary, represented by lawyers from the attorney general's office, continued the defense of the challenged law. On January 28, one day before the appeal was argued, Attorney General Cameron also entered an appearance as counsel for the secretary. *Id.*, at 82–83.

On June 2, 2020, a divided panel of the Sixth Circuit affirmed the District Court's judgment. *EMW Women's Surgical Center, P.S.C.* v. *Friedlander*, 960 F. 3d 785, 790–812. In dissent, Judge Bush argued that the plaintiffs lacked third-party standing and criticized the majority for refusing to wait for our decision on that issue in *June Medical Services L. L. C.* v. *Russo*, 591 U. S. \_\_\_ (2020). Within a week after the panel's decision, the secretary informed the attorney general's office that he would not file a petition for rehearing en banc or a petition for a writ of certiorari, App. 153, 161, but the secretary agreed not to oppose the attorney general if he moved to intervene for the purpose of seeking further review. *Id.*, at 153–154. Two days later, the attorney general moved to withdraw as counsel for the secretary and to intervene as a party on behalf of the Commonwealth. *Id.*, at 152. The secretary did not oppose that motion, but respondents did. *Id.*, at 170–172. Five days later, and within the 14-day deadline for an existing party to seek rehearing, the attorney general tendered a petition for rehearing en banc. *Id.*, at 210–227; Fed. Rules App. Proc. 35(c) and 40(a)(1).

By the same divided vote as before, the panel denied the attorney general's motion to intervene, citing Circuit precedent under which intervention on appeal is judged by essentially the same standard as intervention in district court. See *Blount-Hill* v. *Zelman*, 636 F. 3d 278, 283 (CA6 2011). Applying that standard, the panel majority held, first, that the attorney general's motion was untimely because it was not filed until years of litigation had passed

and the panel had already decided the appeal; second, that no "'substantial legal interest'" was at stake because the attorney general was pursuing "'extraordinary'" forms of review (rehearing en banc and certiorari) to which litigants are not generally entitled; and third, that allowing intervention would prejudice respondents because the attorney general's rehearing petition included an argument (that respondents lacked third-party standing) that the secretary's briefs had not raised.[3]  *EMW Women's Surgical Center, P.S.C.* v. *Friedlander*, 831 Fed. Appx. 748, 749–753 (CA6 2020).

We granted certiorari limited to the question whether the Sixth Circuit should have permitted the attorney general to intervene.  592 U. S. ___ (2021).

## II

In considering this question, we begin with respondents' contention that the attorney general's motion to intervene was jurisdictionally barred.  Respondents never advanced this argument below, and the Sixth Circuit did not consider it.  Nevertheless, we must assure ourselves that jurisdictional requirements are met at all stages of the cases that come before us for review, see *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 506 (2006).

## A

Respondents' argument is narrow and somewhat complicated.  While implicitly conceding that a court of appeals generally has jurisdiction to consider a non-party's motion to intervene in a pending appeal, they claim that one narrow sub-set of non-parties is jurisdictionally barred: those non-parties that are bound by the district court judgment.

--------

[3] In the District Court, an attorney representing the secretary had raised the issue during argument on the secretary's motion for a directed verdict, but the District Court refused to consider the issue on the ground that it should have been raised much earlier.  Tr. 105 (Nov. 15, 2018).

Respondents' argument goes like this. Non-parties who are bound by a judgment can obtain appellate review by filing a notice of appeal within the time prescribed by law. See 28 U. S. C. §2107(a); Fed. Rule App. Proc. 4(a)(1). These time limits are jurisdictional, see *Bowles* v. *Russell*, 551 U. S. 205, 209 (2007); *Torres* v. *Oakland Scavenger Co.*, 487 U. S. 312, 315 (1988); *Griggs* v. *Provident Consumer Discount Co.*, 459 U. S. 56, 61 (1982) (*per curiam*). And because non-parties who are bound by a judgment can seek appellate review in this way, they cannot circumvent the jurisdictional time limits for filing a notice of appeal by filing a motion to intervene after the deadline for filing a notice of appeal has passed.

Applying this theory, respondents contend that the Court of Appeals lacked jurisdiction to entertain the attorney general's motion. Because the attorney general agreed to be bound by the judgment, respondents maintain, he could have filed a notice of appeal, but since he failed to do so within the time allowed by law, his motion for intervention should be treated like an untimely notice of appeal.

### B

This argument fails for the simple reason that no provision of law limits the jurisdiction of the courts of appeals in the way respondents suggest. We do not read a statute or rule to impose a jurisdictional requirement unless its language clearly does so. See *Henderson* v. *Shinseki*, 562 U. S. 428, 439 (2011) (a provision is not jurisdictional when its language "provides no clear indication that Congress wanted that provision to be treated as having jurisdictional attributes"). Here, respondents cite no provision of law that deprives a court of appeals of jurisdiction to entertain a motion for intervention that is filed by a non-party who is bound by the judgment that is appealed. No such language can be found in either 28 U. S. C. §2107, the Federal Rules of Appellate Procedure 3 and 4, or any other provision of

law. We therefore see no basis for holding that petitioner's motion was jurisdictionally barred.

## C

What respondents ask us to recognize is essentially a mandatory claims-processing rule. Such rules are not jurisdictional, and if a non-jurisdictional argument was not raised below, we generally will not consider it as an alternative ground for affirmance. See, *e.g.*, *Granfinanciera, S. A.* v. *Nordberg*, 492 U. S. 33, 38 (1989). In this case, however, we do not rest our decision on respondents' failure to raise this argument in the Court of Appeals. Even if that argument had been preserved, we would not find it persuasive.

Assuming for the sake of argument that parties bound by a judgment are *generally* permitted to appeal that judgment, we do not think it follows that a party may do so regardless of the ground on which the party is bound. Here, respondents rely on the proposition that "[t]he Attorney General, like any other 'person who agrees to be bound by the determination of issues in an action between others is bound *in accordance with the terms of his agreement.*'" Brief for Respondents 15 (quoting *Taylor* v. *Sturgell*, 553 U. S. 880, 893 (2008); emphasis added and alteration omitted). And when a non-party is bound by a judgment for this reason, it is hard to see why the non-party should be precluded from seeking intervention on appeal if the agreement preserves that opportunity.

That is the situation here. In agreeing to be bound, the attorney general specifically "reserve[d] all rights, claims, and defenses . . . in any appeals arising out of this action," App. 28–29, and this language easily covers the right to seek rehearing en banc and the right to file a petition for a writ of certiorari. In addition, the stipulation of dismissal made clear that the judgment to which the attorney general agreed to be bound was the judgment that emerged after all

appellate review concluded. See *id.*, at 30 (judgment binding on attorney general's office "subject to any modification, reversal or vacation of the judgment on appeal").

For these reasons, we refuse to adopt a categorical claims-processing rule that bars consideration of the attorney general's motion. In doing so, we do not attempt to set out a general rule governing the right of non-parties to appeal or to move for appellate intervention.

## III

Having concluded that neither a jurisdictional requirement nor a mandatory claims-processing rule barred consideration of the attorney general's motion, we turn to the question whether the Court of Appeals properly denied that motion. No statute or rule provides a general standard to apply in deciding whether intervention on appeal should be allowed. The Federal Rules of Appellate Procedure make only one passing reference to intervention, and that reference concerns the review of *agency* action. See Rule 15(d); *Amalgamated Transit Union Int'l, AFL–CIO* v. *Donovan*, 771 F. 2d 1551, 1553, n. 3 (CADC 1985). Without any rule that governs appellate intervention, we have looked elsewhere for guidance. Thus we have considered the "policies underlying intervention" in the district courts, *Automobile Workers* v. *Scofield*, 382 U. S. 205, 217, n. 10 (1965), including the legal "interest" that a party seeks to "protect" through intervention on appeal. Fed. Rule Civ. Proc. 24(a)(2).

## A

In defending the Kentucky law, the attorney general asserts a substantial legal interest that sounds in deeper, constitutional considerations. As we have observed, our Constitution "'spli[t] the atom of sovereignty.'" *Alden* v. *Maine*, 527 U. S. 706, 751 (1999) (quoting *Saenz* v. *Roe*, 526 U. S. 489, 504, n. 17 (1999)). "The Constitution limited but did

not abolish the sovereign powers of the States, which retained 'a residuary and inviolable sovereignty.'" *Murphy* v. *National Collegiate Athletic Assn.*, 584 U. S. ___, ___ (2018) (slip op., at 14) (quoting The Federalist No. 39, p. 245 (C. Rossiter ed. 1961)).  Paramount among the States' retained sovereign powers is the power to enact and enforce any laws that do not conflict with federal law.  See U. S. Const., Art. VI, §2.  Therefore, a State "clearly has a legitimate interest in the continued enforceability of its own statutes," *Maine* v. *Taylor*, 477 U. S. 131, 137 (1986), and a federal court must "respect . . . the place of the States in our federal system," *Arizonans for Official English* v. *Arizona*, 520 U. S. 43, 75 (1997).  This means that a State's opportunity to defend its laws in federal court should not be lightly cut off.

Respect for state sovereignty must also take into account the authority of a State to structure its executive branch in a way that empowers multiple officials to defend its sovereign interests in federal court.  See *Virginia House of Delegates* v. *Bethune-Hill*, 587 U. S. ___, ___ (2019) (slip op., at 5).  In this case, although the secretary for Health and Family Services apparently enjoyed the authority under state law to defend the constitutionality of HB 454, the secretary shared that authority with the attorney general.  See Ky. Rev. Stat. Ann. §15.020; see also *Commonwealth ex rel. Hancock* v. *Paxton*, 516 S. W. 2d 865, 868 (Ky. 1974) ("There is no question as to the right of the Attorney General to appear and be heard in a suit brought by someone else in which the constitutionality of a statute is involved").  Indeed, it is the attorney general who is deemed Kentucky's "chief law officer" with the authority to represent the Commonwealth "in all cases."  Ky. Rev. Stat. Ann. §§15.020(1), (3).

The importance of ensuring that States have a fair opportunity to defend their laws in federal court has been recognized by Congress.  Under 28 U. S. C. §2403(b), when a state law "affecting the public interest is drawn in question"

in any "court of the United States" and neither the State nor any state agency or officer is a party, the court must notify the state attorney general, and the State must be allowed to intervene. See also Fed. Rule Civ. Proc. 24(a)(1). Even if this provision is not directly applicable in this case because the secretary for Health and Family Services was still a party when the intervention motion was filed, it nevertheless reflects the weighty interest that a State has in protecting its own laws. The way in which Kentucky divides executive authority and the unusual course that this litigation took should not obscure the important constitutional consideration at stake.[4]

Resolution of a motion for permissive intervention is committed to the discretion of the court before which intervention is sought, see *Automobile Workers*, 382 U. S., at 217, n. 10; Fed. Rule Civ. Proc. 24(b)(1)(a). But a court fails to exercise its discretion soundly when it "base[s] its ruling on an erroneous view of the law," *Cooter & Gell* v. *Hartmarx Corp.*, 496 U. S. 384, 405 (1990), and that is what happened here. The Sixth Circuit panel failed to account for the strength of the Kentucky attorney general's interest in taking up the defense of HB 454 when the secretary for Health and Family Services elected to acquiesce.[5]

_____

[4] JUSTICE KAGAN argues that the Court need not address the constitutional basis for Kentucky's interest in the defense of its laws, but that interest was a primary focus of the briefs and oral argument. And indeed, JUSTICE KAGAN agrees that "a State has a significant interest in enforcing its own laws." *Post*, at 5 (opinion concurring in judgment). Such an interest depends on States' status as "separate sovereigns." *Maine* v. *Taylor*, 477 U. S. 131, 137 (1986).

[5] The dissent argues that the Court of Appeals did not abuse its discretion by denying the attorney general's intervention motion because his predecessor in office had argued that he had no interest in the litigation. *Post*, at 5–6. The dissent argues that we should hold the attorney general to that representation. But the Court of Appeals did not rely on this argument, and for good reason. The attorney general was sued in his role as a state official who could enforce HB 454, and the attorney general had disclaimed any such enforcement authority. See *Ex parte Young*,

B

The panel also erred in its evaluation of the other factors that bear on all applications for appellate intervention. The panel found that the attorney general's motion was not timely because it came after years of litigation in the District Court and after the panel had issued its decision, but its assessment of timeliness was mistaken. Timeliness is an important consideration in deciding whether intervention should be allowed, see, *e.g.*, Fed. Rules Civ. Proc. 24 (a) and (b)(1), but "[t]imeliness is to be determined from all the circumstances," and "the point to which [a] suit has progressed is . . . not solely dispositive," *NAACP* v. *New York*, 413 U. S. 345, 365–366 (1973).

Here, the most important circumstance relating to timeliness is that the attorney general sought to intervene "as soon as it became clear" that the Commonwealth's interests "would no longer be protected" by the parties in the case. *United Airlines, Inc.* v. *McDonald*, 432 U. S. 385, 394 (1977). Our decision in *McDonald* addressed a similar situation. There, a member of a putative plaintiff class moved to intervene for the purpose of appealing the District Court's denial of class certification. *Id.*, at 396. The District Court denied that request because the class member had not "seen fit to come in here and seek any relief from this Court in any way" during "five years" of litigation. *Id.*, at 390. We held, however, that the motion was timely because it was filed soon after the movant learned that the class representatives would not appeal.

The same logic applies here. The attorney general sought to intervene two days after learning that the secretary would not continue to defend HB 454. The motion was also

_____

209 U. S. 123, 159–160 (1908). The attorney general now seeks to intervene not to defend a right to exercise enforcement powers under HB 454, but in his role as the Commonwealth's "chief law officer," Ky. Rev. Stat. Ann. §15.020(1), who has the authority to defend Kentucky's interests in federal court when no other official is willing to do so.

filed within a week after the Sixth Circuit issued its decision and within the 14-day time limit for petitioning for rehearing en banc. Although the litigation by that time had proceeded for years, that factor is not dispositive. The attorney general's need to seek intervention did not arise until the secretary ceased defending the state law, and the timeliness of his motion should be assessed in relation to that point in time.

Respondents argue that the attorney general should have realized as soon as Governor Beshear took office that his secretary for Health and Family Services might abandon the defense of HB 454. Respondents state that Governor Beshear ran "on a pro-choice platform and . . . had repeatedly withdrawn from the defense of abortion restrictions when serving as Attorney General." Brief for Respondents 28. But the new secretary whom he appointed after taking office as Governor had continued to defend the law on appeal, and respondents do not explain why the attorney general should have known that the secretary would change course after the panel's decision was handed down.

In arguing to the contrary, respondents point to our decision in *NAACP* v. *New York,* 413 U. S. 345, but they misread that decision. In that case, several parties unsuccessfully sought to intervene in a Voting Rights Act case after the United States, which had brought the action, consented to the entry of judgment in favor of the defendant. The District Court found that this request was untimely, and we affirmed, noting that the United States' answer to the complaint, which had been filed almost a month earlier, had revealed that the Government "was without information with which it could oppose the motion for summary judgment." *Id.*, at 367. That response, we concluded, should have alerted the would-be intervenors about the United States' likely course of action. *Ibid.* We also observed, among other things, that intervention had "the potential for seriously disrupting" the approaching elections. *Id.*, at

368–369.

The situation here is starkly different. As discussed, the attorney general's motion was timely, and intervention would not have produced anything like the disruption that the Court cited in *NAACP* v. *New York*. Thus, the panel was mistaken in finding that the attorney general's motion was untimely.

## C

The panel's finding on prejudice was similarly flawed. The panel argued that intervention would prejudice respondents because the attorney general's rehearing petition pressed an issue (third-party standing) that had not been raised in the secretary's briefs. 831 Fed. Appx., at 751, 752. But the lack of third-party standing was not the only argument advanced in the rehearing petition, App. 221–227, and in any event, allowing the attorney general to intervene would not have necessitated that the third-party standing issue be entertained. If the secretary for Health and Family Services had not retired from the field, he could have raised that same argument in a petition for rehearing or in a petition for certiorari. In that event, the relevant court (the Sixth Circuit in deciding whether to grant en banc review and this Court in deciding whether to grant certiorari) could have considered whether the third-party standing argument should be considered despite the secretary's failure to raise the issue at an earlier point in the litigation. That the issue was raised in the attorney general's rehearing petition, as opposed to one filed by the secretary, was immaterial.

Our decision in *McDonald* illustrates the panel's error. In that case, we held that the defendant was not "unfairly prejudiced simply because an appeal on behalf of putative class members was brought by [an unnamed class member] rather than by one of the original" parties, 432 U. S., at 394. The situation here is similar.

Respondents advance one additional argument on the issue of prejudice. They claim that intervention would unfairly deprive them of a "reasonable expectation" stemming from Governor Beshear's election. Brief for Respondents 31. Respondents contend that Governor Beshear had a "history of refusing to defend abortion restrictions" and that they therefore reasonably thought that the secretary, who was appointed by the Governor, would not pursue "extraordinary forms of relief if they prevailed in their appeal." *Ibid.*

The loss of this sort of claimed expectation does not amount to unfair prejudice in the sense relevant here. Respondents may have hoped that the new Governor would appoint a secretary who would give up the defense of HB 454, but they had no legally cognizable expectation that the secretary he chose or the newly elected attorney general would do so before all available forms of review had been exhausted.

\*   \*   \*

For these reasons, the Court of Appeals erred in denying the attorney general's motion to intervene. That court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 20–601

DANIEL CAMERON, ATTORNEY GENERAL OF
KENTUCKY, PETITIONER *v.* EMW WOMEN'S
SURGICAL CENTER, P. S. C., ET AL.

*ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT*

[March 3, 2022]

JUSTICE THOMAS, concurring.

I join the opinion of the Court. I write to address another reason why respondents and their *amici* err in maintaining that the Court of Appeals lacked jurisdiction to consider Attorney General Cameron's motion to intervene.

As the Court explains, respondents now argue that Attorney General Cameron is jurisdictionally barred from intervening in the appeal because his predecessor, then-Attorney General Beshear, stipulated as a condition of his dismissal that the Kentucky attorney general's office would be bound by the District Court's final judgment. According to respondents, that stipulation required the attorney general to timely notice an appeal consistent with Federal Rules of Appellate Procedure 3 and 4 if he wished to challenge the District Court's judgment on appeal. To allow intervention in the appeal, respondents posit, would circumvent the jurisdictional requirements of Federal Rules of Appellate Procedure 3 and 4.

The Court rightly rejects respondents' novel argument because the attorney general's stipulation preserved his office's right to participate in the appeal. See *ante,* at 6–7. But in addition to the infirmity the Court identifies, respondents' jurisdictional argument suffers from another,

more basic flaw: Rules 3 and 4 permit only "parties" to appeal a district court judgment, and the attorney general was not a "party" to the judgment after he was dismissed from the litigation.

Federal Rules of Appellate Procedure 3(a)(1) and 4(a)(1)(A) together require that any appeals from a district court judgment be pursued by filing a notice of appeal within 30 days after entry of the judgment. See also 28 U. S. C. §2107(a). We have described this requirement as "jurisdictional." See *Torres* v. *Oakland Scavenger Co.*, 487 U. S. 312, 315 (1988); see also *Gonzalez* v. *Thaler*, 565 U. S. 134, 147 (2012). We have also held that Rule 3(c)—requiring, among other things, that the notice of appeal "specify the party or parties taking the appeal," Fed. Rule App. Proc. 3(c)(1)(A)—is likewise jurisdictional. See *Torres*, 487 U. S., at 314–318; *Becker* v. *Montgomery*, 532 U. S. 757, 765–766 (2001). Rule 3(c)(1)(A)'s requirement that the notice specify the "party" taking the appeal reflects the "well settled" "rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment." *Marino* v. *Ortiz*, 484 U. S. 301, 304 (1988) (*per curiam*). For example, individuals who are "not parties to the underlying lawsuit" and fail to intervene in the District Court cannot appeal a District Court's judgment. *Ibid.* We are not at liberty to create "exceptions to this general rule," even when "the nonparty has an interest that is affected by the trial court's judgment." *Ibid.* (internal quotation marks omitted).

Here, the attorney general was not a "party" to the District Court's final judgment. Then-Attorney General Beshear was originally a "party" to this suit because he was named as a defendant in the complaint. But the District Court later dismissed Attorney General Beshear's office from the litigation in May 2018—about a year before final judgment. A "party" dismissed from a lawsuit is no longer a "party" to it after his dismissal. Just as "intervention is the requisite method for a nonparty to become a party to a

lawsuit," *United States ex rel. Eisenstein* v. *City of New York*, 556 U. S. 928, 933 (2009), dismissal is the quintessential (if not only) method for a party to become a nonparty, see, *e.g.,* 67A C. J. S., Parties §86 (2013) ("Once a person is dismissed from a lawsuit, he or she is generally no longer a party to it").

One need hardly look beyond the case caption to see how dismissal ended the attorney general's status as a "party" to the litigation. To be sure, case captions are "'not determinative as to the identity of the parties to the action.'" *Eisenstein*, 556 U. S., at 935 (quoting 5A C. Wright & A. Miller, Federal Practice and Procedure §1321, p. 388 (3d ed. 2004)). But they can be instructive, given that "'[t]he designation of persons as parties is usually made in the caption of the summons or complaint.'" *Devlin* v. *Scardelletti*, 536 U. S. 1, 15 (2002) (Scalia, J., dissenting) (quoting Restatement (Second) of Judgments §34, Comment *a*, Reporter's Note, p. 347 (1980)). Here, because respondents initially named then-Attorney General Beshear as the lead defendant in their complaint, the District Court's orders originally captioned the defendants as "ANDREW G. BESHEAR, *et al*." *E.g.,* App. 28. After the District Court dismissed the attorney general on May 21, 2018, the court ordered the clerk to modify the case caption to "reflect the remaining properly named Defendants": "Meier, et al." *Id.*, at 5, 7; see also App. to Pet. for Cert. 104a (District Court final judgment listing the defendants as "ADAM W. MEIER et al."). The District Court's modification of the caption confirms that when the court issued its judgment, the attorney general was no longer a "party."

Because the attorney general was not a "party" to the District Court's final judgment, respondents' jurisdictional argument necessarily fails. As a nonparty, the attorney general could not notice an appeal under Rules 3 and 4. And because he could not notice an appeal, he could not possibly

have been obligated to do so, rather than pursue intervention—"the requisite method for a nonparty to become a party to a lawsuit." *Eisenstein*, 556 U. S., at 933.

Respondents resist this conclusion and contend that the attorney general remained a "party" because then-Attorney General Beshear stipulated upon dismissal that "any final judgment in this action . . . will be binding on the Office of the Attorney General, subject to any modification, reversal or vacation of the judgment on appeal." App. 29–30. Respondents' argument has a veneer of plausibility only because of our decision in *Devlin* v. *Scardelletti*, 536 U. S. 1. There, a majority of this Court held that a nonnamed member of a certified class action was a "party" who could appeal the approval of a settlement to which he objected. *Id.,* at 10. Rejecting the settled bright-line rule that only a *named* party may appeal a final judgment, the Court adopted a vague, functionalist inquiry that determined "party" status "based on context." *Ibid.*

Applying that test, *Devlin* held that "nonnamed class members are parties to the proceedings in the sense of being bound by the [judgment]," and it was "th[at] feature of class action litigation that require[d] that class members be allowed to appeal the approval of a settlement." *Ibid.* "To hold otherwise," the Court explained, "would deprive nonnamed class members of the power to preserve their own interests in a settlement that will ultimately bind them." *Ibid.*

I joined Justice Scalia's dissent in *Devlin*, which reiterated that "'parties' to a judgment are those named as such—whether as the original plaintiff or defendant in the complaint giving rise to the judgment, or as 'one who though not an original party becomes a party by intervention, substitution, or third-party practice.'" 536 U. S*.,* at 15 (quoting *Karcher* v. *May*, 484 U. S. 72, 77 (1987); alterations omitted). The *Devlin* Court's holding was, and is, "contrary" to that "well-established law." 536 U. S., at 150. To reason,

as *Devlin* did, that merely being bound by a judgment transformed a nonnamed class member into a "party," surely "c[a]me as news to law students everywhere." *Id.,* at 18; see also *Marino*, 484 U. S., at 304 (previously rejecting that individuals become "parties" merely because they have "an interest that is affected by the trial court's judgment"). After all, "[t]here are any number of persons who are not parties to a judgment yet are nonetheless bound by it." *Devlin*, 536 U. S., at 18. For example, as pertinent here, when "'[a] person agrees to be bound by the determination of issues in an action between others,'" we call application of claim or issue preclusion to that person "*nonparty* preclusion" precisely because agreeing to be bound by a judgment does not alone make one a "party" to it. *Taylor* v. *Sturgell*, 553 U. S. 880, 893 (2008) (quoting Restatement (Second) of Judgments §40, at 390; emphasis added).

*Devlin* was demonstrably erroneous for the reasons set forth in Justice Scalia's dissent, and we should overrule it in an appropriate case. That said, *Devlin* does not control here. Several years after *Devlin*, in *Eisenstein*, we unanimously reiterated the principle that "[a] 'party' to litigation is '[o]ne by or against whom a lawsuit is brought.'" 556 U. S., at 933 (quoting Black's Law Dictionary 1154 (8th ed. 2004)). Relying on *Devlin*'s reasoning, the petitioner there argued that the United States must be a "party" within the meaning of Rule 4(a)(1)(B) because the Government is "bound by the judgment" in all actions under the False Claims Act "regardless of its participation in the case." 556 U. S*.,* at 936. Consistent with our pre-*Devlin* cases, we reiterated that this fact was "not determinative" because "nonparties may be bound by a judgment for a host of different reasons," 556 U. S., at 936, none of which suffices to transform them into parties. We distinguished *Devlin*'s contrary reasoning by invoking the specific "class-action nature of the suit" there, 556 U. S*.,* at 934, n. 3, essentially cabining that precedent to class actions alone. And, true to

*Eisenstein*, we have not once relied on *Devlin* outside the class-action context. See *United States* v. *Sanchez-Gomez*, 584 U. S. \_\_\_, \_\_\_ (2018) (slip op., at 6); *Standard Fire Ins. Co.* v. *Knowles*, 568 U. S. 588, 593 (2013); *Smith* v. *Bayer Corp.*, 564 U. S 299, 313–315 (2011). *Devlin* is therefore an aberration from our otherwise consistent view that only a named party may file a notice of appeal under Rules 3 and 4. And because this case does not involve a class action, *Devlin* has no precedential force.

\*    \*    \*

The Office of the Kentucky Attorney General was not a named "party" to the District Court's final judgment. The attorney general, accordingly, could not notice an appeal from that judgment under Rules 3 and 4. And because the attorney general could not appeal the District Court's judgment, Attorney General Cameron moved to intervene and pursue "the requisite method for a nonparty to become a party to a lawsuit." *Eisenstein*, 556 U. S., at 933. Far from evading the jurisdictional requirements of Rules 3 and 4, Cameron's motion to intervene was his only legitimate option to both comply with those Rules and participate in the appeal as a party. For this reason, as well as those given in the opinion of the Court, respondents' jurisdictional argument fails.

# SUPREME COURT OF THE UNITED STATES

‗‗‗‗‗‗‗‗‗

No. 20–601

‗‗‗‗‗‗‗‗‗

## DANIEL CAMERON, ATTORNEY GENERAL OF KENTUCKY, PETITIONER *v.* EMW WOMEN'S SURGICAL CENTER, P. S. C., ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[March 3, 2022]

JUSTICE KAGAN, with whom JUSTICE BREYER joins, concurring in the judgment.

I agree with the Court that the Sixth Circuit should have allowed the attorney general to intervene in this suit after another state official ceased defending the challenged Kentucky law. And my reasons for reaching that conclusion partly overlap with the Court's. But I would differently frame and respond to the serious threshold issue that respondent EMW raises. I also see no need to rely on "constitutional considerations" to resolve the intervention question before us. *Ante*, at 7 (opinion of the Court).

I

No jurisdictional rule, the Court and I agree, directly bars the attorney general's intervention here. The rule EMW relies on requires a losing party to file a notice of appeal within 30 days of the entry of judgment. See 28 U. S. C. §2107(a); Fed. Rule App. Proc. 4(a)(1)(A). This Court has made clear that the timely-appeal rule is jurisdictional. See, *e.g.*, *Bowles* v. *Russell*, 551 U. S. 205, 209 (2007). So if a party (or a non-party having an equivalent right to appeal) files an appeal on the 31st day after judgment, the appellate court lacks jurisdiction. But here the attorney general did not file such a late appeal. He instead moved

to intervene in an appeal timely brought by Kentucky's secretary for health (after the secretary decided to forgo en banc or Supreme Court review). And the provisions setting out the timely-appeal rule do not address that situation. See *ante*, at 5–6.

The majority goes on to deny the existence of a "claims-processing" rule preventing the attorney general's intervention, see *ante*, at 6–7, but I think that terminology misplaced and distracting. We often consider whether timing requirements are "jurisdictional" rules or else "claims-processing" rules. See, *e.g.*, *United States* v. *Kwai Fun Wong*, 575 U. S. 402, 409–410 (2015). (The question comes up because only the latter may be waived or overcome by equitable considerations; the former are absolute bars to entertaining a matter. See *ibid.*) But here we know the answer to that frequent question. As just stated, the timely-appeal rule—the only rule anyone thinks relevant—is jurisdictional. There is not a claims-processing rule in sight. And EMW nowhere suggests otherwise; it never asserts the existence of a claims-processing rule barring the attorney general's motion.

The argument EMW makes—and it is a serious one—rests on the idea that litigants should not be allowed to use intervention procedures to end-run jurisdictional rules. Consider a hypothetical to illustrate the problem. Suppose a party (or a non-party having a right to appeal) misses the 30-day deadline to file a notice of appeal from a judgment. On the 31st day, he regrets his negligence and attempts to intervene in another party's appeal in the same case. Should the appellate court allow the intervention? Our precedent, along with common sense, suggests not—even though the timely-appeal rule, as noted above, does not address issues of intervention. That is because permitting intervention there would effectively "vitiate[]" the "mandatory nature of the [appellate] time limits." *Torres* v.

*Oakland Scavenger Co.*, 487 U. S. 312, 315 (1988). Or otherwise said, granting intervention would enable the party to circumvent those limits, by awarding him the "equivalent" of more "time for filing a notice of appeal." *Ibid.*; see *Hutchinson* v. *Pfeil*, 211 F. 3d 515, 519 (CA10 2000) ("[I]ntervention is not a means to escape the consequences of noncompliance" with the jurisdictional timely-appeal rule). That is the essence of EMW's objection. EMW contends that the attorney general, though a non-party, could have appealed the District Court's judgment because it bound his office. But the attorney general chose at the time not to appeal. He should not now be allowed, EMW says, to sidestep the jurisdictional deadline he missed by means of intervening. See Brief for Respondents 10, 15–16, 19–21.

But the anti-circumvention rationale for denying intervention does not sensibly apply here because of the change in circumstances between the time to appeal and the time of the motion to intervene. Recall that the attorney general, by agreeing early on to the dismissal of the claims against him, effectively handed off defense of the challenged law to the health secretary. See *ante*, at 2. After the District Court ruled, the secretary continued to perform that function, appealing the court's decision to strike down the law. Assume here, as EMW argues, that the attorney general also could have appealed.* Even if so, the attorney general had no reason to take that step: The secretary was handling the appeal, just as he had handled the trial court proceedings. It was only once the Sixth Circuit ruled and the secretary ceased defending the law—choosing not to seek en

———————

*That assumption is perfectly reasonable. The agreement of dismissal made the District Court's judgment binding on the attorney general's office (subject to any later revision or reversal). See App. 29–30. And a non-party bound by a judgment often has the same appeal rights as a party. See *Devlin* v. *Scardelletti*, 536 U. S. 1, 7–8 (2002) (discussing cases); C. Wright, A. Miller, & E. Cooper, 15A Federal Practice and Procedure §3902.1, pp. 186–189, n. 35 (2d ed. Supp. 2021) (same).

banc or Supreme Court review—that the (now new) attorney general had an urgent reason to rejoin the suit: If he did not, the law would be invalidated. The motion to intervene, then, was not an attempt to escape the consequences of failing to adhere to appellate deadlines, as in the hypothetical offered above. The motion was instead a response to a major shift in the litigation, creating a new demand for the attorney general's participation. And that real-world fact answers EMW's argument. Granting the motion would not countenance an end-run around the timely-appeal rule by giving the attorney general a do-over. It would simply recognize that only after the time for appeal had come and gone had a need arisen for the attorney general to reenter the suit.

## II

With that threshold objection answered, the issue becomes how the factors bearing on intervention motions play out. I agree with much of what the Court says on that issue (and also with its view that the attorney general's agreement did not preclude his intervention). But I see no reason to cast the analysis, even partially, in constitutional terms. See *ante*, at 7–9. Our longstanding practice is to avoid unnecessary discussion of constitutional questions. See, *e.g.*, *Ashwander* v. *TVA*, 297 U. S. 288, 345–348 (1936) (Brandeis, J., concurring). And contra the majority, no invocation of, or lofty observations about, the Constitution are here needed. The considerations governing intervention motions—applying equivalently to any person seeking to intervene, including the attorney general—show why the Sixth Circuit went wrong in closing off the suit. See generally Fed. Rule Civ. Proc. 24.

Most fundamentally, the attorney general had a strong reason for intervening. Once again, the secretary had defended the challenged law as constitutional until the Sixth

Circuit ruled; but he then decided to abandon the argument. If the attorney general could not assume the defense, and thus continue contesting EMW's claim, Kentucky could no longer enforce its statute. And it is of course true, as the majority says, that a State has a significant interest in enforcing its own laws. See *ante*, at 8. As a practical matter, then, the attorney general belonged in the suit, absent some good cause to exclude him.

And as the Court concludes, no such cause was present. See *ante*, at 10–13. The intervention motion, though coming late in the suit, was still timely. The attorney general intervened as soon as he had a reason to do so—more specifically, two days after he learned that the secretary would no longer defend the challenged law. See *United Airlines, Inc.* v. *McDonald*, 432 U. S. 385, 394 (1977) (holding that a motion to intervene was timely because it was made "as soon as it became clear" that the movant's interests "would no longer be protected" by existing parties). And the motion was filed within the 14-day window for requesting an en banc rehearing—so did nothing to delay the suit's normal progress. See Fed. Rules App. Proc. 35(c) and 40(a)(1). Nor did the motion otherwise prejudice EMW. The attorney general sought to pursue only the usual next steps of appellate review—what the secretary would have done had he not ceased defending the law. Of course, EMW would have preferred the secretary's action to bring the case to an end. But an unrealized gain of that kind does not count as a legally cognizable harm. See *McDonald*, 432 U. S., at 394 (holding that a litigant cannot claim "unfair[] prejudice[]" when one person takes over an appeal from another). Nothing, then, counterbalances the reasons for enabling the attorney general's inclusion.

*          *          *

So I arrive, if via a somewhat different path, at the same endpoint as the Court. In my view, the attorney general's

motion to intervene was not an end-run around the timely-appeal rule.  And with that issue out of the way, this is a textbook case for intervention.  The Sixth Circuit should have allowed the attorney general to step into the litigation to defend the challenged law.

# SUPREME COURT OF THE UNITED STATES

---

No. 20–601

---

## DANIEL CAMERON, ATTORNEY GENERAL OF KENTUCKY, PETITIONER *v.* EMW WOMEN'S SURGICAL CENTER, P. S. C., ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[March 3, 2022]

JUSTICE SOTOMAYOR, dissenting.

In every case, there must be a "point of time when litigation shall be at an end." *Browder* v. *Director, Dept. of Corrections of Ill.*, 434 U. S. 257, 264 (1978) (internal quotation marks omitted). To effectuate that endpoint, our legal system requires parties to abide by representations made in a lawsuit regardless of later regrets. In this case, the attorney general of Kentucky stipulated to his own dismissal as a party in the District Court and agreed to have another official represent Kentucky's interests. Only years later, and after the Court of Appeals affirmed the District Court's judgment, did the attorney general ask the Court of Appeals to allow him to return based on a position he had disavowed when securing his dismissal earlier in the litigation. The Court of Appeals refused his request to intervene.

Generally, the decision whether to permit intervention in a case is left to the "sound discretion" of the court in which intervention is sought, as that court is the best positioned to assess potential inefficiencies and unfairness that might result. *NAACP* v. *New York*, 413 U. S. 345, 366 (1973). The Court acknowledges that highly deferential standard, but nonetheless bends over backward to accommodate the attorney general's reentry into the case. I fear today's decision will open the floodgates for government officials to

evade the consequences of litigation decisions made by their predecessors of different political parties, undermining finality and upsetting the settled expectations of courts, litigants, and the public alike. I respectfully dissent.

## I

In March 2018, the Kentucky Legislature enacted House Bill 454 (H. B. 454), which prohibits "dilation and evacuation" abortions after 11 weeks of pregnancy except in medical emergencies. Respondents, a clinic and two of its physicians, challenged the law, contending that it violates the Fourteenth Amendment by imposing an undue burden on the right to previability abortion. Respondents named four defendants in the complaint, including the attorney general of Kentucky and the interim secretary of Kentucky's Cabinet for Health and Family Services (secretary).[1] Each was named in his official capacity. At the time, Andrew Beshear, a Democrat, served as Kentucky's attorney general. The secretary served as part of the administration of Governor Matt Bevin, a Republican.

Respondents sought a motion for a temporary restraining order and preliminary injunction. In response, the attorney general disclaimed responsibility for enforcing the law. The attorney general explained that "H. B. 454 does not confer upon the Attorney General the authority or duty to enforce the provisions as enacted" and "does not provide the Attorney General with any regulatory responsibility or other authority to take any action." Electronic Case Filing in No. 3:18–cv–00224 (WD Ky., May 8, 2018) (ECF), Doc. 42, p. 1. He concluded that, as a result, "there is no act of the Attorney General or his Office for the Court to enjoin." *Ibid.* The attorney general asserted no interest in defending the constitutionality of H. B. 454 on behalf of the State.

--------

[1] The other two defendants were the executive director of the Kentucky Board of Medical Licensure and the Commonwealth's Attorney for the 30th Judicial Circuit of Kentucky.

Shortly thereafter, the attorney general and the respondents submitted to the District Court a joint stipulation and proposed order of dismissal. The stipulation provided that the attorney general "agrees that any final judgment in this action concerning the constitutionality of HB 454 (2018) will be binding on the Office of the Attorney General, subject to any modification, reversal or vacation of the judgment on appeal." ECF Doc. 46, at 2. It also specified that he reserved "all rights, claims, and defenses" that were available to him, including those related to "whether he is a proper party in this action and in any appeals arising out of this action." *Id.*, at 1. The District Court entered the order dismissing the attorney general from the case.

The attorney general did not participate in any further proceedings before the District Court. The secretary continued to defend H. B. 454. After a 5-day bench trial, the District Court issued a permanent injunction against the enforcement of H. B. 454, declaring it unconstitutional under this Court's precedents. Subsequently, the secretary alone filed a notice of appeal.

After the secretary's appeal was fully briefed, but before argument, then-Attorney General Beshear was elected Governor and Daniel Cameron, a Republican, was elected as Kentucky's new attorney general. Four of the secretary's lawyers moved to withdraw from the case, explaining that they would no longer be employed in their current positions. Some weeks later, the same four attorneys, now employed by the Office of the Attorney General, appeared as counsel for the secretary. Attorney General Cameron also entered an appearance as counsel for the secretary. He did not seek to intervene.

The Court of Appeals rendered judgment against the secretary, affirming the District Court's judgment. After this decision, the secretary communicated to the attorney general that he did not intend to defend H. B. 454 further by,

for example, filing a petition for rehearing en banc or seeking a writ of certiorari. Attorney General Cameron and the lawyers from his office who had appeared as counsel for the secretary moved to withdraw, and the attorney general moved to intervene as a party in his own right. This was nearly five months after the attorney general reappeared as counsel for the secretary and over two years after the District Court entered the stipulated order of dismissal. The attorney general also tendered a petition for rehearing en banc.

The Court of Appeals denied the motion and dismissed the petition for rehearing en banc. It observed, among other things, that the attorney general's motion to intervene came "years into [the case's] progress," after both the District Court and the Court of Appeals had issued decisions. *EMW Women's Surgical Center, P.S.C.* v. *Friedlander*, 831 Fed. Appx. 748, 750 (CA6 2020). It explained that having been "named . . . as a defendant" in the complaint and having "stipulated [to his own] dismissal," the attorney general was unquestionably put on notice of the case long before the Court of Appeals issued its decision. *Id.,* at 751. In the Court of Appeals' view, allowing the attorney general to intervene at this late hour would give would-be intervenors "every incentive to sit out litigation until [a court of appeals] issue[s] a decision contrary to their preferences, whereupon they can spring to action." *Id.,* at 750. The Court of Appeals clarified that it was "not reach[ing] the issue of whether Attorney General Cameron has a substantial legal interest in the subject matter of this case" nor "question[ing] whether states' attorneys general may appropriately intervene to defend their states' laws," but merely addressing the appropriateness of the attorney general's intervention under the circumstances of "this particular case." *Id.,* at 752, n. 4.

This Court granted the attorney general's petition for certiorari, and now reverses.

## II

I have no quarrel with the Court's holding that no jurisdictional bar precluded the attorney general's intervention. On the facts of this case, however, I disagree with the Court's determination that the Court of Appeals' denial of the attorney general's motion to intervene constituted an abuse of discretion. The Court reaches that result only by giving short shrift to a critical and unusual aspect of this case: The attorney general's motion to intervene was based on arguments he had eschewed below and was filed only after judgments had been rendered by both the District Court and the Court of Appeals. The attorney general's change in position alone requires affirmance.

The Court correctly observes that "[r]esolution of a motion for permissive intervention is committed to the discretion of the court before which intervention is sought." *Ante,* at 9 (citing *Automobile Workers* v. *Scofield,* 382 U. S. 205, 217, n. 10 (1965); Fed. Rule Civ. Proc. 24(b)(1)(a)). The Court may reverse, in other words, only if it determines that the Court of Appeals abused its discretion by denying the attorney general's motion for intervention. See generally *NAACP,* 413 U. S., at 366.

The attorney general sought to intervene in the Court of Appeals "to ensure that [the State's] interests with respect to H. B. 454" were "fully defended." ECF in No. 19–5516 (CA6, June 11, 2020), Doc. 56, pp. 5, 8; see *id.,* at 13 (noting that there is "no doubt" that Kentucky, "through Attorney General Cameron," has a sufficient legal interest in the matter). In the District Court, however, the attorney general took a different view. There, he represented that he had no interest in the case because "H. B. 454 does not confer upon the Attorney General the authority or duty to enforce the provisions as enacted," and insisted that the law "does not provide the Attorney General with any regulatory responsibility or other authority to take any action related

to the Act." ECF Doc. 42, at 1. Based on this representation, respondents entered into a stipulation agreement with the attorney general, and the District Court entered its dismissal order.

As a general matter, "'where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" *New Hampshire* v. *Maine*, 532 U. S. 742, 749 (2001) (quoting *Davis* v. *Wakelee*, 156 U. S. 680, 689 (1895); alteration omitted). This principle is not limited to private litigants. Courts and other parties are also "entitled to rely on [a] State's plausible interpretation of the law it is charged with enforcing." *Sorrell* v. *IMS Health Inc.*, 564 U. S. 552, 563 (2011). A state official's late-breaking effort to change his theory of state law comes with costs to judicial efficiency and finality, and it disrupts the expectations not only of the adversarial litigant but of other parties who may have litigated based on their understanding of both the State's position and who would represent the State's interests.[2]

The Court's failure to acknowledge the attorney general's switch in position leads it to an erroneous result. The Court primarily faults the Court of Appeals for "fail[ing] to account for the strength of the Kentucky attorney general's

_____

[2] In the majority's view, the attorney general should not be held to his earlier representation because, although he secured his own dismissal in his official capacity and now seeks to intervene in his official capacity, his theory of his role in the litigation is different. See *ante*, at 9–10, n. 5. The Court cites no authority for this "two hats theory," Tr. of Oral Arg. 29, because it cannot. This Court's precedents recognize, of course, the distinction between litigating in one's personal capacity and one's official capacity. See, *e.g., Bender* v. *Williamsport Area School Dist.*, 475 U. S. 534, 543–544 (1986). But the Court has never held that a state official can wear separate "hats" within his official capacity for distinct purposes, with different legal effect.

interest in taking up the defense of HB 454." *Ante,* at 9. All agree that States and their authorized officials have substantial sovereign interests in defending their laws. The Office of the Attorney General, however, previously represented that it had *no* interest in these proceedings. Had the attorney general been a private litigant, that decision would have been binding: This Court regularly "has . . . refused to consider a party's argument that contradicted a joint 'stipulation [entered] at the outset of th[e] litigation.'" *Christian Legal Soc. Chapter of Univ. of Cal., Hastings College of Law* v. *Martinez*, 561 U. S. 661, 677 (2010) (quoting *Board of Regents of Univ. of Wis. System* v. *Southworth*, 529 U. S. 217, 226 (2000); alterations in original). Respect for state sovereignty does not entitle a state official to evade these well-established consequences. Given the attorney general's change in position and the deferential standard of review, the Court of Appeals did not abuse its discretion by denying his motion for intervention.

Further, as the Court acknowledges, Kentucky law provides that the attorney general and other authorized state officials, including the secretary, "shar[e] . . . authority" to defend the constitutionality of state laws, or to decline to do so. *Ante,* at 8; see Ky. Rev. Stat. Ann. §12.210(1) (West 2021). The Court makes much of the attorney general's role in defending Kentucky law, but gives short shrift to the manner in which Kentucky has structured its law to allow other state officers to represent the State's interests in court. When the attorney general stipulated to dismissal from the case, he acquiesced to the secretary's right under state law to represent Kentucky's interests in the manner that the secretary saw fit.

Notably, the Court's decision to allow intervention on appeal is without precedent. Before the Court of Appeals, the attorney general was able to identify only two instances, both from the Ninth Circuit, in which a federal court of appeals granted a post-decision motion to intervene, a fact

that "points decisively against intervention" and hardly suggests that denial of intervention would be an abuse of discretion. 831 Fed. Appx., at 750. Neither of those two cases involved a situation in which the intervenor on behalf of the State was a party to the case earlier in the proceedings, let alone one in which the intervenor had previously disclaimed his theory of intervention to obtain dismissal from the suit. See *Day* v. *Apoliona*, 505 F. 3d 963, 965–966 (CA9 2007); *Peruta* v. *County of San Diego*, 824 F. 3d 919, 941 (CA9 2016) (en banc). Indeed, the Ninth Circuit has denied intervention on facts similar to these. In *Yniguez* v. *Arizona*, 939 F. 2d 727 (1991), the court considered a state attorney general's motion to intervene on appeal to defend the constitutionality of a state law where the attorney general had previously "argued for and won a dismissal of the suit against him in the district court." *Id.*, at 729. There, as here, the attorney general sought to intervene after the only remaining state defendant in the case declined to pursue the case further. *Id.*, at 730. The court nonetheless held that "having argued in the district court that he should not be a party, the Attorney General is estopped from now arguing that he should be." *Id.*, at 738. Other Courts of Appeals have similarly held that stipulations entered into by a public official in his official capacity are binding on the official's successors. *Morales Feliciano* v. *Rullan*, 303 F. 3d 1, 8 (CA1 2002); *Vann* v. *United States Dept. of Interior*, 701 F. 3d 927, 929 (CADC 2012); see generally 11A A. Miller, M. Kane, & C. Wright, Federal Practice and Procedure §2956 (3d ed. 2021).

Perhaps the Court means to excuse the attorney general from his prior stipulation because of the intervening election. That election undoubtedly explains, as a practical matter, the attorney general's change in position. But the Court's reasoning would seem to apply equally if Attorney General Cameron had held office since the outset of this lawsuit, made a calculated decision to stipulate to dismissal

and let another state officer take the lead, and later sought to reenter when that officer decided not to pursue further appeals.

Moreover, this is not the first time a governmental office has changed hands in the middle of a protracted lawsuit, and it certainly will not be the last. Elections have consequences not just for the public but also for state officers who may find themselves bound by strategic litigation choices made by their predecessors in office. Shifts in the political winds do not support a special carveout to longstanding principles of estoppel. Rules that protect reliance and finality exist for good reason: Courts, litigants, and the public must be able to trust representations made in court. If anything, that reliance is only heightened when a government official represented that he had no interest in defending state law.

\*     \*     \*

The question in this case is not whether a state attorney general may intervene, after a federal court of appeals already has rendered its judgment, for the purpose of defending a state law where no other state actor will do so. At issue is a more specific question: whether the Court of Appeals acted within its discretion by denying this attorney general leave to intervene when his office previously stipulated to dismissal on grounds that contradicted his argument for intervention. Under these circumstances, I would not disturb the "sound discretion" of the court below. *NAACP*, 413 U. S., at 366. I respectfully dissent.